# 24-916-cv(L)
## 24-1121-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

>>◄◄

TIFFANY RUTLEDGE, INDIVIDUALLY AND AS MOTHER, GENERAL GUARDIAN OF, ET AL., KRISTOPHER WHITE, BRIDGET MCCONNELL, ALEXANDER HOLLAND, CHRISTINE HOLLAND,

*Plaintiffs-Appellants,*

v.

WALGREEN CO., COSTCO WHOLESALE CORPORATION, CVS PHARMACY, INC, SAFEWAY, INC., WALMART INC., RITE AID CORPORATION, TARGET CORPORATION, SAM'S WEST, INC., DOLLAR TREE, INC., 7-ELEVEN, INC., FAMILY DOLLAR STORES, LLC., THE KROGER CO., DOLLAR TREE STORES, INC., JOHNSON & JOHNSON CONSUMER INC., BIG LOTS, GIANT FOOD LLC, ALBERTSON'S, HARRIS TEETER LLC, DOLGENCORP, LLC,

*Defendants-Appellees.*



*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR *AMICI CURIAE* LAW PROFESSORS
## IN SUPPORT OF PLAINTIFFS-APPELLANTS

Lawrence P. Eagel
J. Brandon Walker
Marion C. Passmore
BRAGAR EAGEL & SQUIRE, P.C.
*Attorneys for* Amici Curiae *Law Professors*
  Anne Bloom, Erwin Chemerinsky,
  Valerie P. Hans and Richard L. Jolly
810 Seventh Avenue, Suite 620
New York, New York 10019
212-308-5858



# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

IDENTITY AND INTEREST OF AMICI CURIAE .................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT .......................................................................................................... 5

    I.    UNDER RULE 702 AND THE SUPREME COURT'S RULING IN *DAUBERT*, THE JUDGE IS A GATEKEEPER, NOT AN INDEPENDENT EXPERT OR FACTFINDER .......................... 5

    II.   EXTENSIVE EMPIRICAL EVIDENCE SHOWS THAT CIVIL JURIES ADD SIGNIFICANTLY TO THE QUALITY OF FACTFINDING IN CIVIL DECISION-MAKING, EVEN IN CASES INVOLVING COMPLEX EXPERT TESTIMONY ............................................................. 8

    III.  THE DISTRICT COURT'S UNWARRANTED EXPANSION OF JUDICIAL GATEKEEPING INFRINGES ON THE PARTIES' RIGHT TO TRIAL BY JURY ................................. 10

CONCLUSION ..................................................................................................... 13

STATEMENT OF RELATED CASES .................................................................. 14

CERTIFICATE OF COMPLIANCE ...................................................................... 15

CERTIFICATE OF SERVICE ............................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bourjaily v. United States*,
    483 U.S. 171 (1987)..................................................................................6

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001)................................................................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).....................................................................3, 5, 6, 8

*Granfianciera v. Nordberg*,
    492 U.S. 33 (1989)..................................................................................12

*Jacob v. New York City*,
    315 U.S. 752 (1942)............................................................................3, 10

*Parsons v. Bedford*,
    28 U.S. 433 (1830)..................................................................................11

*SEC v. Jarkesy*,
    219 L. Ed. 2d 650, 144 S. Ct. 2117 (2024)........................................3, 11

*Tamosaitis v. URS Inc.*,
    781 F.3d 468 (9th Cir. 2015) .................................................................10

**Rules**

Federal Rule of Evidence 702...........................................................................*passim*

Federal Rule of Evidence 804................................................................................5

**Constitutional Provisions**

Seventh Amendment - Article III to the U.S. Constitution ..............................*passim*

ii

**Other Authorities**

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE,
 AGENDA BOOK (June 7, 2022) ...................................................................6, 7

David L. Faigman, *The Daubert Revolution and the Birth of
 Modernity: Managing Scientific Evidence in the Age of Science*,
 46 UC DAVIS LAW REV. 895, 904 (2013) .............................................................5

*Essay of a Democratic Federalist* (1787), *reprinted in*
 3 THE COMPLETE ANTI-FEDERALIST 58, 60
 (Herbert J. Storing ed., 1981) ...........................................................................11

THE FEDERALIST NO. 83 (Alexander Hamilton) .......................................................11

Larry Heuer & Steven Penrod, *Trial Complexity:
 A Field Investigation of Its Meaning and Its Effects*,
 18 LAW. & HUM. BEHAV. 29, 49 (1994) .............................................................4

Learned Hand, *Historical and Practical Considerations Regarding
 Expert Testimony*, 15 HARV. LAW REV. 40, 40-49 (1901) .................................10

Richard L. Jolly, Valerie P. Hans, & Robert S. Peck,
 *Democratic Renewal and the Civil Jury*,
 57 GA. L. REV. 79 (2022) ....................................................................4, 8, 10, 11

Richard Lempert, *Civil Juries and Complex Cases: Taking
 Stock after Twelve Years*, in VERDICT: ASSESSING THE
 CIVIL JURY SYSTEM 181 (Robert E. Litan ed., 1993) ........................................4, 8

Susan Haack, *An Epistemologist in the Bramble-Bush: At the
 Supreme Court with Mr. Joiner*, J. OF HEALTH POLITICS,
 POLICY & LAW 227 (2001) ..................................................................................9

Valerie P. Hans & Michael J. Saks, *Improving Judge & Jury
 Evaluation of Scientific Evidence*, 147 DAEDALUS 164, 166,
 172 (2018) ...........................................................................................................9

## IDENTITY AND INTEREST OF AMICI CURIAE

Amici curiae Anne Bloom, Erwin Chemerinsky, Valerie P. Hans, and Richard L. Jolly are law professors with expertise in Evidence Law, civil justice, empirical legal research, and the Constitutional right to trial by jury. Amici curiae are interested in this case because the trial court's decision below, if allowed to stand, would represent an alarming and unwarranted expansion of the judicial gatekeeping role, with implications for the Plaintiffs' Seventh Amendment right to trial by jury and the civil justice system as a whole.[1]

Anne Bloom is the Executive Director of the Civil Justice Research Initiative, an access to justice think tank at Berkeley Law. Previously, she was Associate Dean for Research and Professor of Law at the University of the Pacific McGeorge School of Law where she taught Torts, Civil Procedure, and Complex Litigation. She is trained in both law and social science and has authored many articles on civil justice-related subjects.

Erwin Chemerinsky is the Dean and Jesse H. Choper Distinguished Professor of Law at Berkeley Law at the University of California. He is the author

---

[1] No party or counsel for a party in this appeal authored the proposed amici brief in whole or in part, or made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity made a monetary contribution intended to fund the preparation or submission of this brief, other than the amici curiae or its counsel in the pending appeal. All parties have consented to the filing of this brief.

of nineteen books, including a leading casebook and a leading treatise on constitutional law, and more than 200 law review articles. In 2016, he was named a fellow of the American Academy of Arts and Sciences.

Valerie P. Hans is the Charles F. Rechlin Professor of Law at Cornell Law School. She is one of the nation's leading authorities on the jury system. Trained as a social scientist, she has carried out extensive research and lectured around the globe on juries and jury reforms as well as the uses of social science in law. She is the author of 10 books and over 150 research articles.

Richard L. Jolly is Associate Professor of Law at Southwestern Law School where he teaches in the areas of civil and criminal procedure, evidence, and torts. Much of his research and writing focuses on the socio-political and structural role of lay participation in judicial decision-making, through the use of juries. His scholarship has appeared or is forthcoming in journals including the *Michigan Law Review*, *Boston College Law Review*, *Pepperdine Law Review*, and *DePaul Law Review.*

## SUMMARY OF ARGUMENT

This case involves an appeal from a trial court's sweeping order precluding the testimony of all of Plaintiffs' general causation experts and subsequent dismissal of the case. Plaintiffs' Opening Brief addresses the many errors – both scientific and legal – in the trial court's lengthy and scientifically dense opinion,

which takes issue not only with the proposed testimony of the Plaintiffs' experts in this case but also with methodologies and conclusions of preeminent scientists in the scientific community more broadly. Plaintiffs' Opening Brief *passim*. We do not opine on who is right or wrong in this highly technical scientific debate between the judge and the Plaintiffs' experts below. Indeed, we believe it was a mistake on the part of the trial judge to do so. *Amici* offer this brief to draw the Court's attention to the limitations of the judicial gatekeeping role – as set out in Federal Rule of Evidence 702 ("Rule 702") and the Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

As we explain herein, under Rule 702 and *Daubert*, the judge is the gatekeeper, not an independent expert or factfinder. The recent revision of Rule 702 did not change this fundamental aspect of the judicial gatekeeping role. The District Court's extensive fact finding—and, in some instances, cursory rejection of widely accepted scientific methods—in this case went well beyond its authorized gatekeeping role. In doing so, the Court inappropriately usurped the role of the jury and infringed on the parties' Seventh Amendment rights. *See Jacob v. New York City*, 315 U.S. 752 (1942) ("The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment."); *see also SEC v. Jarkesy*, 219 L. Ed. 2d 650, 658, 144 S. Ct. 2117 (2024) (emphasizing the

importance of the right to trial by jury in American history and noting that "any seeming curtailment" of that right '"should be scrutinized with utmost care.'" (citation omitted).

While judges may form their own, private opinions on factual questions, their role as judicial gatekeepers does not permit them to substitute their own views for those of the experts, even if they believe their own scientific analyses are better informed. In the American civil justice system, the Seventh Amendment secures juries as factfinders in cases such as this, and for good reason. Extensive empirical research has shown for decades that civil juries add significantly to the quality of fact-finding in civil decision-making, even in cases involving complex expert testimony. *See, e.g.*, Larry Heuer & Steven Penrod, *Trial Complexity: A Field Investigation of Its Meaning and Its Effects*, 18 LAW. & HUM. BEHAV. 29, 49 (1994); Richard Lempert, *Civil Juries and Complex Cases: Taking Stock after Twelve Years*, in VERDICT: ASSESSING THE CIVIL JURY SYSTEM 181 (Robert E. Litan ed., 1993). Moreover, civil juries play a critical role in helping to assure the American public of the legitimacy of our courts. *See generally* Richard L. Jolly, Valerie P. Hans, & Robert S. Peck, *Democratic Renewal and the Civil Jury*, 57 GA. L. REV. 79 (2022) (describing the historic role of the civil juries in American democracy and expressing concern about expansions in judicial gatekeeping infringing on the role of juries).

# ARGUMENT

**I.  Under Rule 702 and the Supreme Court's Ruling in *Daubert*, the Judge is a Gatekeeper, Not an Independent Expert or Factfinder.**

Under revised Rule 702 and the Supreme Court's opinion in *Daubert*, in order to determine admissibility courts are directed to assess the reliability of proposed expert testimony by reviewing the methods and principles that underlie the proposed evidence. *See* Fed R. Evid. 702; *Daubert*, 509 U.S. at 590 (1993) (explaining that the "[p]roposed testimony must be supported by appropriate validation" or "good grounds"). In other words, instead of focusing on the persuasiveness of the experts' conclusions, courts are directed to focus on evaluating the *process* of how the experts reached their conclusions. *Id.*, 509 U.S. at 593–95. Once the reliability of the experts' testimony is confirmed, the trial court may not conduct any further analysis of its substance.

This limitation is not unique to Rule 702. As one leading expert has explained, the analysis is not unlike a court's assessment under Federal Rule of Evidence 804 of whether a "dying declaration" was indeed the statement of a dying witness; once the court has made that initial determination, the court does not proceed to determine whether the content of the statement is persuasive. *See* David L. Faigman, *The Daubert Revolution and the Birth of Modernity: Managing Scientific Evidence in the Age of Science*, 46 UC DAVIS LAW REV. 895, 904 (2013) (comparing the gatekeeper function set out in *Daubert* to a court's assessment of

5

whether the hearsay exception applies for a dying declaration). Similarly, once it is determined that the methods underlying an expert opinion are more likely than not valid, Rule 702 has no further impact on whether the expert evidence may be considered at trial. *See* FED. R. EVID. 702, Committee Notes on Rules - 2023 Amendment ("This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules"); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration.").

Nothing in the recent revisions to Rule 702 changed the fundamentals of this analysis. *See* COMMITTEE ON RULES OF PRACTICE AND PROCEDURE, AGENDA BOOK (June 7, 2022), 872 (emphasizing that the Rules Committee intended no substantive change in the principles set forth in *Daubert*). The Committee Note accompanying the revised rule also confirms that, as before, Rule 702 simply requires that "the expert's knowledge 'help'" the trier of fact to understand the evidence or to determine a fact in issue." *Id*. at 894. Parties proffering expert testimony "do not have to demonstrate to the judge . . . that the assessments of their experts are correct . . . only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Id.* at 893 (citations omitted).

The Committee Note further cautions that, in conducting its analysis, "nothing" in the rule "requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support." *Id.* at 895. "For example," the Committee noted, "the fact that the expert has not read every single study that exists" does not raise a question of admissibility. *Id.* at 893. Similarly, the Committee noted that "[i]t will often occur that experts come to different conclusions based on contested sets of facts." *Id.* This, too, is not a question of admissibility.

Thus, it is not necessary for courts to exclude "either side's experts" when "experts come to different conclusions based on contested sets of facts." *Id.* at 893. The only question for the trial judge to consider is the reliability of the proffered testimony. It is then up to the jury, not the judge, to "decide which side's experts to credit." *Id.*

As these cautionary notes from the Federal Rules Committee make clear, while judges may privately form their own opinions on expert testimony, their role as judicial gatekeepers is not to dispute the methodological approaches of scientific experts or to reach their own independent conclusions when there are contested facts. The role of a judge as gatekeeper is simply to ensure that the proffered expert opinions are more likely than not within the bounds of what can be reasonably concluded.

Here, the trial court's extensive independent assessment of scientific evidence plainly goes far beyond the gatekeeping role envisioned by the Federal Rules Committee and the Supreme Court in *Daubert*. It is notable that in a nearly 150-page opinion, just a few pages discuss legal rules and case law. The rest is devoted to the presentation and evaluation of scientific studies and the expert opinions. As Justice Rehnquist warned in *Daubert*, when courts are engaged in scientific assessments that are this "far afield from the expertise of judges," it is prudent for the judiciary to "proceed with great caution . . . because our reach can so easily exceed our grasp." *See Daubert*, 509 U.S. at 600–01 (Rehnquist, C.J., concurring in part and dissenting in part).

**II. Extensive Empirical Evidence Shows that Civil Juries Add Significantly to the Quality of Factfinding in Civil Decision-making, Even in Cases Involving Complex Expert Testimony.**

It is not only imprudent for judges to attempt to discern scientific truth, at this early stage of the proceedings, it is also unnecessary. Contrary to what many seem to think, a significant body of empirical evidence indicates that juries are not at all "befuddled by scientific evidence." Jolly, et al., *supra*, at 136 (citing RICHARD O. LEMPERT, CIVIL JURIES AND COMPLEX CASES: TAKING STOCK AFTER TWELVE YEARS 181–247 (Robert E. Litan, ed. 1993) (concluding that "the weight of the evidence indicates that juries can reach rationally defensible verdicts in complex cases"). Indeed, as two law professors explained to the Federal Rules

8

Committee, "studies have shown that 'generalist judges may be no more able to master the intricacies of complex, expert scientific testimony than a representative jury,' and in fact, 'judges may lack strengths jurors have in evaluating scientific evidence (citations omitted).'" Letter to Judge Schiltz and the Advisory Committee Members from Richard Jolly and Valerie Hans dated February 16, 2022 (citing Valerie P. Hans & Michael J. Saks, *Improving Judge & Jury Evaluation of Scientific Evidence*, 147 DAEDALUS 164, 166, 172 (2018)).

True, the Advisory Committee notes to Rule 702 state that judges must use their gatekeeping role to determine the reliability of evidence since "jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully [expert evidence]." *See* FED. R. EVID. 702, Committee Notes on Rules - 2023 Amendment. But this empirically unsupported comment does not transform the judge into a factfinder. Indeed, the Advisory Committee makes clear that the recent amendments to Rule 702 were "revised to emphasize that the amendment is not intended to limit the right to jury trial." *Id.* The court must go no further than simply assessing reliability, lest it intrude on the role of the jury.

This limitation is not just for constitutional purposes, it is also for practical purposes. Laypeople bring unique expertise to the courtroom. *See generally* Susan Haack, *An Epistemologist in the Bramble-Bush: At the Supreme Court with Mr. Joiner*, J. OF HEALTH POLITICS, POLICY & LAW 227 (2001) (describing courts'

9

historical reliance on jurors for expertise) (citing Learned Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 HARV. LAW REV. 40, 40–49 (1901) (describing expert practices from the 1600s). And in today's climate of rapid scientific and technological changes, the expertise of laypeople may be particularly valuable, as many judges simply have not had the same level of training or exposure to advancements in science and technology that many American workers have had.

As scholars have emphasized, the involvement of laypeople in the factfinding process of civil litigation also helps to ensure the American public of the legitimacy of legal decision-making. For many Americans, at the time of our founding and today, juries—in civil cases as well as criminal—serve as an important bulwark against corruption. *See* Jolly, et al., *supra*, *passim* (describing the historic role of the civil juries in American democracy and, in particular, their role in serving as a bulwark against corruption in the courts).

### III. The District Court's Unwarranted Expansion of Judicial Gatekeeping Infringes on the Parties' Right to Trial by Jury.

The District Court's conclusions in this case also raise concerns about whether the District Court inappropriately usurped the role of the jury and infringed on the parties' Seventh Amendment rights. *See Jacob v. New York City*, *supra*; *see also Tamosaitis v. URS Inc.*, 781 F.3d 468, 488 (9th Cir. 2015) (noting

10

that the Seventh Amendment right to trial by jury in civil cases extends to plaintiffs and defendants alike).

While courts certainly have the authority and responsibility to control the admissibility of evidence, they must not do so in such a way as to disempower their constitutional colleagues—the jury.  To be sure, the animating purpose of the Seventh Amendment was not that jurors are always more sophisticated factfinders than are judges; they very well may not be.  Instead, the animating purpose was to check abuses of power by the legislature, executive, and—perhaps most importantly—the judiciary.  *See, e.g.*, *Essay of a Democratic Federalist* (1787), *reprinted in* 3 THE COMPLETE ANTI-FEDERALIST 58, 60 (Herbert J. Storing ed., 1981).  Fear that judges would run amok without the jurors' watchful eyes drove Anti-Federalists to nearly derail the entire American experiment before it began.  *See* THE FEDERALIST NO. 83 (Alexander Hamilton); *Parsons v. Bedford*, 28 U.S. 433, 446 (1830) ("One of the strongest objections originally taken against the [Constitution] was the want of an express provision securing the right of trial by jury in civil cases").  Among the pounds of flesh demanded for ratification was the Seventh Amendment. Jolly, et al., *supra*, at 94–96.

Today, the civil jury and the Seventh Amendment continue to serve this foundational role.  The Supreme Court has maintained that the right to a jury trial may not be infringed by legislative or Rule enactment.  *See Jarkesy*, 219 L. Ed. 2d

11

650, 674, 144 S. Ct. at 2136 ("Congress cannot 'conjure away the Seventh Amendment . . . .'" (quoting *Granfianciera v. Nordberg*, 492 U.S. 33, 52 (1989)). And while Rule 702 on its face does not undermine the constitutional authority of jurors by requiring judges to determine admissibility of expert testimony, under the Seventh Amendment jurors have the sole responsibility of making factual determination by assessing the credibility of evidence and the consequences of its weight. *See, e.g.*, *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001).

Here, the District Court's elaborate, 150-page foray into assessment of scientific evidence does so infringe on the parties' constitutional rights. The District Court took it upon itself not merely to assess admissibility, but to entirely displace the role of the jury. That is not the role of judges under Rule 702, and it is not the role of judges under Article III and the Seventh Amendment.

## CONCLUSION

Amici respectfully request that the Court reverse the decision below or, in the alternative, remand for reconsideration in light of Rule 702.

DATED:  July 24, 2024  Respectfully Submitted,

*/S/ Lawrence P. Eagel*
**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel
J. Brandon Walker
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel.: (212) 308-5858
Fax: (212) 214-0506
Email:  eagel@bespc.com
           walker@bespc.com
           passmore@bespc.com

*Counsel for Amici Curiae Law Professors Anne Bloom, Erwin Chemerinsky, Valerie P. Hans, and Richard L. Jolly*

13

## STATEMENT OF RELATED CASES

Amici are not aware of any related cases that are currently pending in this Court.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the Amici Curiae Law Professors' Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it uses proportionally spaced Times New Roman typeface, 14-point. The Amici Curiae Law Professors' Brief complies with Fed. R. App. P. 32(a)(7)(B), as modified by 2d Cir. R. 32.1(a)(4)(A), and Fed. R. App. P. 29(a)(5), because the brief comprises 2,874 words, exclusive of the sections that do not count towards the limitation pursuant to Fed. R. App. P. 32(f), according to the word count provided by Microsoft Office 365 word-processing software.

Dated: July 24, 2024                                  BRAGAR EAGEL & SQUIRE, P.C.

*/S/ Lawrence P. Eagel*
Lawrence P. Eagel

*Counsel for Amici Curiae*
*Law Professors Anne Bloom,*
*Erwin Chemerinsky, Valerie P. Hans,*
*and Richard L. Jolly*

## CERTIFICATE OF SERVICE

I, Lawrence P. Eagel, certify as follows:

I authorized the electronic filing of the foregoing Brief for Amici Curiae Law Professors In Support of Plaintiffs-Appellants with the Clerk of the Court of the Second Circuit Court of Appeals by using the appellate CM/ECF system, and participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. Within the time proscribed by the Local Appellate Rules, six hard copies of the foregoing Brief for Amici Curiae Law Professors In Support of Plaintiffs-Appellants will be sent to the office of the Clerk of the Court of the Second Circuit Court of Appeals.

Dated: July 24, 2024						BRAGAR EAGEL & SQUIRE, P.C.

*/S/ Lawrence P. Eagel*
Lawrence P. Eagel

*Counsel for Amici Curiae*
*Law Professors Anne Bloom,*
*Erwin Chemerinsky, Valerie P. Hans,*
*and Richard L. Jolly*