# 24-916(L)

## 24-1121(CON)

# In the United States Court of Appeals for the Second Circuit

---

IN RE: ACETAMINOPHEN – ASD-ADHD PRODUCTS LIABILITY LITIGATION

On Appeal from the United States District
Court for the Southern District of New York
(Nos. 1:22-md-03043, 1:22-mc-3043) (Hon. Denise Cote)

---

**BRIEF OF THE LANIER LAW FIRM, P.C. and PLLC; THE WATTS LAW FIRM, L.L.P.; BEASLEY ALLEN LAW FIRM; PAUL LLP; KERSHAW TALLEY BARLOW; THE LUFF LAW FIRM, PLLC; LITTLEPAGE BOOTH; TRACEY FOX & WALTERS; CARLSON ATTORNEYS; DOVEL & LUNER LLP; THE CRACKEN LAW FIRM PC; MOSKOW LAW GROUP, LLC; POULIN WILLEY ANASTOPOULO, LLC; CHAFFIN LUHANA LLP; MADERAL BYRNE & FURST PLLC; LEVIN SEDRAN & BERMAN and COOPER MASTERMAN PLLC, AS AMICI CURIAE IN SUPPORT OF APPELLANTS AND REVERSAL**

---

Evan M. Janush, Esq.
THE LANIER LAW FIRM, PLLC
535 Madison Avenue, 12th Floor
New York, New York 10022

Paul J. Doolittle, Esq.
POULIN WILLEYANASTOPOULO, LLC
32 Ann Street
Charleston, SC 29403

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amici curiae The Lanier Law Firm, PLLC and P.C.; The Watts Law Firm, L.L.P.; Beasley Allen Law Firm; Paul LLP; Kershaw Talley Barlow; The Luff Law Firm, PLLC; Littlepage Booth; Tracey Fox & Walters; Carlson Attorneys; Dovel & Luner LLP; The Cracken Law Firm PC; Moskow Law Group, LLC; Poulin Willey Anastopoulo, LLC; and Chaffin Luhana LLP; Maderal Byrne & Furst PLLC; Levin Sedran & Berman, and Cooper Masterman PLLC state that each amicus is a privately held law firm, that none has a parent corporation, and that no publicly held corporation owns 10% or more of any amicus.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS.................................................................................. iii

TABLE OF AUTHORITIES ............................................................................iv

IDENTITY AND INTEREST OF AMICI CURIAE ..................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ...............................................................................................4

    I.  RULE 37(b)(2) DOES NOT AUTHORIZE SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDERS OR COORDINATION ORDERS, BECAUSE NEITHER IS AN "ORDER TO PROVIDE OR PERMIT DISCOVERY." ...............................................................................................4

    II.  AFFIRMING THE ORDER BELOW WILL FORCE MDL LEADERSHIP COUNSEL TO CHOOSE BETWEEN THEIR LEADERSHIP ROLE AND REPRESENTING CLIENTS IN PARALLEL STATE COURT LITIGATION. ...........................................................................................11

CONCLUSION ...........................................................................................15

CERTIFICATE OF COMPLIANCE ...................................................................16

CERTIFICATE OF SERVICE .........................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Berk v. Choy*, 607 U.S. 187 (2026) ................................................................8

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008) ................................14

*Coleman v. Am. Red Cross*, 23 F.3d 1091 (6th Cir. 1994) ........................................7

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) .......................8

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ...................................8

*In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006) ...............12

*J.C. v. Zimmerman*, 150 F.4th 136 (2d Cir. 2025) .....................................................8

*Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305 (11th Cir. 2001) ................................7

*Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004) ......................13

*Smith & Fuller, PA v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012) ....7

*United States v. Cunningham*, 292 F.3d 115  (2d Cir.2002)  .................................6

*Westinghouse Elec. Corp. v. Newman & Holtzinger, PC*, 992 F.2d 932 (9th Cir. 1993) .......................................................................................................................7

**Statutes and Rules**

28 U.S.C. § 1407 ........................................................................................................11

Fed. R. Civ. P. 26(c) ............................................................................................5, 6, 7

Fed. R. Civ. P. 26(c)(2) ...............................................................................................5

Fed. R. Civ. P. 37(b)(2)(A) ...........................................................................3, 4, 5, 6, 9

Fed. R. Civ. P. 37(b) advisory committee's note to 1970 amendment ......................5

**Other Authorities**

Manual for Complex Litigation, Fourth §§ 20.31, .312 (Federal Judicial Center 2004) ..........................................................................................................................11

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

Amici curiae are plaintiffs' law firms that represent injured plaintiffs in mass tort and multidistrict litigation nationwide. Many of the amici curaie firms, The Lanier Law Firm, PLLC and P.C.; The Watts Law Firm, L.L.P.; Beasley Allen Law Firm; Paul LLP; Kershaw Talley Barlow; The Luff Law Firm, PLLC; Littlepage Booth; Tracey Fox & Walters; Carlson Attorneys; Dovel & Luner LLP; The Cracken Law Firm PC; Moskow Law Group, LLC; Poulin Willey Anastopoulo, LLC; and Cooper Masterman PLLC have served in a leadership role on behalf of plaintiffs in this MDL, where counsel from those firms work alongside Mr. Keller, one of the appointed co-lead counsel. Amici and their clients depend on the same structure of coordinated national litigation that the district court's order places in jeopardy: firms that accept MDL leadership responsibilities on behalf of hundreds or thousands of plaintiffs also, in the ordinary course, represent individual clients in related state court proceedings.

Amici therefore have a direct and substantial interest in the question presented. If Rule 37(b)(2) of the Federal Rules of Civil Procedure can be used to

---

[1] All parties have consented to the filing of this brief. No party or party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money intended to fund preparing or submitting it. No person or entity—other than amici curiae and their counsel—contributed money that was intended to fund preparing or submitting this brief.

impose fee-shifting sanctions on MDL leadership counsel for how they use discovery that was already produced in a separate, non-MDL state court action, rather than only for withholding discovery from an adversary in the MDL itself, then any firm accepting an MDL leadership role does so at the risk of exposure for good-faith disputes over the scope of confidentiality restrictions in litigation the MDL court does not otherwise supervise. That risk will chill firms from accepting leadership roles, or from continuing to represent state court clients once they do, to the detriment of the plaintiffs those firms represent and the efficient administration of mass tort litigation generally.

## SUMMARY OF ARGUMENT

The District Court turned a minor dispute between the parties about a protective order into a disproportionate $50,000.00 sanctions order against Plaintiffs' counsel, all without a hearing. The District Court did so after erroneously ruling against Plaintiffs at the *Daubert* stage, a ruling that this Court has already found to be an abuse of discretion. And the District Court did so based on a rule that does not even apply to the facts in this case. This was a serious abuse, too, and one that only further illustrates the District Court's bias against a litigation in which Plaintiffs have presented serious evidence that Defendants' products caused their serious neurodevelopmental injuries. Specifically, the district court sanctioned Ashley Keller and Keller Postman LLC under Rule 37(b)(2) for how they used, in a

separate Texas state court action, discovery designated as confidential under the MDL Protective Order. But, critically, the sanctions do not stem from any failure by Keller Postman to produce discovery it was withholding from an adversary. That extension of Rule 37(b)(2) is wrong twice over.

First, Rule 37(b)(2) authorizes sanctions only for failure to obey "an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). By the rule's terms, and consistent with its history and purpose, that phrase concerns orders compelling a party to produce material it has withheld. The Rule does not reach protective orders restricting the later use of material already produced, and it does not reach coordination orders governing whether litigants in a separate state action may draw on that material at all. Though this Court has not resolved the question, the answer is clear. Rule 37(b)(2) does not reach the MDL Protective Order or the Coordination Order, because both restrict how a party that already possesses MDL discovery may use it, rather than compelling any party to produce discovery. That the Coordination Order's narrow exception for coordinated state actions was never triggered here because Texas never adopted it, does not bring this case closer to Rule 37(b)(2); on the contrary, it confirms only a use restriction on an MDL party, and no order compelling production, was ever purportedly violated.

Second, affirming the order below will have consequences well beyond the parties to this appeal. MDL leadership counsel routinely represents individual clients

3

in parallel state court actions making the same or similar claims; that dual role is not an aberration but a structural feature of how national mass tort litigation is staffed and litigated. If the mere existence of a protective order and coordination order in an MDL can expose leadership counsel to fee-shifting sanctions for arguments made in a separate state court on behalf of a different client, firms will be forced to choose between accepting MDL leadership roles and continuing to represent clients in state court, or else to decline coordinated representation altogether. Either outcome disserves the plaintiffs those firms represent and undermines the efficiencies that coordinated pretrial proceedings are meant to achieve.

For the reasons set forth below, Amici curiae respectfully request that this Court reverse the district court's May 8, 2026, Opinion and Order.

## ARGUMENT

**I. RULE 37(b)(2) DOES NOT AUTHORIZE SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDERS OR COORDINATION ORDERS, BECAUSE NEITHER IS AN "ORDER TO PROVIDE OR PERMIT DISCOVERY."**

Rule 37(b)(2) allows sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The rule provides a list of available sanctions, from an adverse-inference order to dismissal or default judgment. *See id*. 37(b)(2)(A)(i)–(vi). These remedies confirm that the Rule addresses a party withholding ordered discovery not purportedly violating a protective order.. By providing district courts with authority to sanction a party for

4

refusing to cooperate with an order to provide discovery, the rule's drafters made clear that efforts to prejudice an adversary by improperly withholding discoverable information in the instant action could be punished up-through dismissal or default judgment depending on the severity of the infraction.

But a protective order entered under Rule 26(c) does the opposite: it limits what a party may do with discovery it has received. That distinction is critical. A counsel-driven and negotiated protective order under Rule 26(c)(1) is not itself "an order to provide or permit discovery," as understood by Rule 37(b)(2)(A). That is clear when evaluating Rule 26(c) as a whole. Specifically, Rule 26(c)(2) provides that after "a motion for a protective order is wholly or partly denied" a district court "may . . . order that any party or person *provide or permit discovery*." Fed. R. Civ. P. 26(c)(2) (emphasis added). It is that second, responsive discovery order, not the antecedent protective order, that the Advisory Committee Notes to the 1970 amendment of Rule 37(b) had in mind when they explained that Rule 37(b)(2) "should provide comprehensively for enforcement of all" orders "authoriz[ing] orders for discovery," citing Rule 26(c) among others. Fed. R. Civ. P. 37(b) advisory committee's note to 1970 amendment. This is further confirmed through the parallel language used in Rule 26(c)(2) and Rule 37(b)(2)(A). The mirror use of the phrase "provide or permit discovery" across these rules means that, to the extent that Rule 37(b)(2)(A) applies to Rule 26(c), the clear import of that language requires an

5

interpretation that it is directed at orders issued under Rule 26(c)(2), not standard protective orders negotiated by the parties. *Cf. United States v. Cunningham*, 292 F.3d 115, 118 (2d Cir.2002) ("[S]imilar language contained within the same section of a statute must be accorded a consistent meaning.")

Separately, the timeline of this case confirms that Rule 37(b)(2) cannot be the basis for sanctions on plaintiffs' lead counsel. The discovery at issue was produced long ago. Attorney Keller did not refuse to answer interrogatories, did not fail to appear for a deposition or withhold documents, and did not otherwise prevent an opposing party have access to discovery. The alleged violation occurred only after the discovery was completed and the materials were in Keller's possession. The attorney's conduct involved the subsequent use of previously produced information, not a failure to permit or provide discovery.

That distinction is determinative. Rule 37(b)(2) concerns disobedience of an order requiring discovery to be provided or permitted. The Rule does not make every violation of an order entered during discovery a failure to provide or allow discovery. Nor should it. Where discovery was already produced and the purported misconduct relates only later occurred with those materials, the violation necessarily falls outside the operative language stated in Rule 37(b)(2).

To be sure, the courts of appeals have not come to a uniform conclusion on whether Rule 37(b)(2) reaches ordinary Rule 26(c)(1) protective orders. The

Eleventh Circuit has held that it does not: "a Rule 26(c) protective order is not 'an order to provide or permit discovery,' and therefore, such orders do not fall within the scope of Rule 37(b)(2)," *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001), and the Sixth Circuit has implicitly found the same, *see Coleman v. Am. Red Cross*, 23 F.3d 1091, 1099 (6th Cir. 1994) (Ryan, J., dissenting) (noting majority was correct to implicitly find Rule 37(b) does not apply to protective orders where "[t]he text of Rule 37(b) refers to the situations in which it applies, and they include discovery orders pursuant to Rule 26(f). Nowhere does the rule mention protective orders or Rule 26(c), which is concerned with protective orders.").

By contrast, the Fifth Circuit upheld Rule 37(b)(2) sanctions for a protective order violation on the theory that the order at issue "permitted discovery" to proceed, *Smith & Fuller, PA v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012), following dicta from the Ninth Circuit assuming, without close analysis of the rule's text or history, that protective orders fall within Rule 37(b)(2)'s reach, *see Westinghouse Elec. Corp. v. Newman & Holtzinger, PC*, 992 F.2d 932, 934-35 (9th Cir. 1993). The interpretation by Six and Eleventh Circuits more naturally follow the text of the Federal Rules.

To date, this Court has not considered whether Rule 37(b)(2) covers protective orders. So, the district court, absent binding precedent, turned instead to the practice

7

of other judges within its own district. But there is no strength in numbers for improper interpretation. And

this Court's own precedent already points toward the narrower interpretation employed by the Eleventh Circuit. Specifically, this Court has held that Rule 37 sanctions must rest on the violation of a "clearly articulated order of the court *requiring specified discovery.*" *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025) (*quoting Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)) (emphasis added). An order restricting the subsequent use of discovery, by its very terms, does not "requir[e] specified discovery.".

This Court has likewise instructed that Rule 37 must be interpreted according to "the plain language" and "plain text of the rule." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294, 298 (2d Cir. 2006). The Supreme Court has since confirmed that the same interpretive approach governs the Federal Rules generally: courts "interpret the Federal Rules the same way [they] interpret federal laws more generally: by giving them their plain meaning." *Berk v. Choy*, 607 U.S. 187, 192 (2026) Applying that settled approach here leaves no room for the expansive interpretation that the district court adopted.

The statutory text provides a separate reason why Rule 37does not apply here: it relies on independent protective-order-versus-discovery-order distinction. Rule 37(b)(2)'s remedies apply to "the court where the action is pending." Fed. R. Civ. P.

8

37(b)(2)(A). This requirement for an active action in which discovery remains outstanding, does not describe this MDL. MDL discovery concluded after a single, general-causation phase; final judgment was entered against all MDL plaintiffs; and those judgments have been on appeal to this Court for nearly two years. There is no discovery left to compel in an action that has already proceeded to final judgment, and no textual basis for treating Rule 37(b)(2) as a sanctioning power that outlives the pending action it was written to serve.

The Coordination Order reinforces this analysis. Like the Protective Order, the Coordination Order restricts what a party that already possesses MDL discovery may do with that material outside the MDL. Under its terms, absent three specified conditions discovery produced in the MDL shall not be provided to counsel in a Coordinated Action, and, more broadly, that unless a Related Action becomes a Coordinated Action, discovery produced in the MDL may not be used in the Related Action at all. This default rule, does not compel document production, but instead tells a party (and counsel) that already has the material, here, Keller Postman, what it may not do with material already in its possession.

The district court found that the three conditions were never satisfied in the Texas Action: neither the State of Texas nor its counsel executed the Coordination Order or the Participation Agreement, and neither consented to coordinate the Texas Action with the MDL. That finding does not aggravate the violation the district court

9

found. It clarifies what was actually violated. Because the Texas Action never qualified as a Related Action, the narrow exception that would have authorized Keller Postman to use MDL discovery there was never triggered, and the default bar under both the Protective Order and the Coordination Order applied to Keller Postman's own conduct in full force. The sanctioned conduct constitutes nothing more than a single infraction of a use restriction binding an MDL party, described once under the Protective Order and mirrored in the Coordination Order provision that defines when its exception applies. This infraction is not a failure by anyone to provide or permit discovery within the meaning of Rule 37(b)(2).

That Mr. Keller and Keller Postman, rather than the State of Texas, are the sanctioned parties below and before this Court on appeal is precisely the point. The statutory inquiry under Rule 37(b)(2) poses is not whose lawsuit the discovery was used in, but what kind of order was violated. An order limiting a party's subsequent use of discovery it already holds does not transform an order to provide or permit discovery merely because the party violated it while representing a different client in a different forum. The Coordination Order's default use restriction, like the Protective Order's, remains a use restriction wherever it is violated, and Rule 37(b)(2), for the reasons explained above, does not reach it.

**II. AFFIRMING THE ORDER BELOW WILL FORCE MDL LEADERSHIP COUNSEL TO CHOOSE BETWEEN THEIR LEADERSHIP ROLE AND REPRESENTING CLIENTS IN PARALLEL STATE COURT LITIGATION.**

10

Because Multidistrict litigation comprises a substantial majority of the federal civil docket, the system depends on a small number of firms willing to accept leadership roles, front the cost of common-benefit work, and litigate on behalf of plaintiffs who will never individually control the litigation. See 28 U.S.C. § 1407. To compensate those firms, common-benefit fee structures reflect the reality that leadership counsel and their firms also represent individual clients in related actions outside the MDL, including in state court. The Federal Judicial Center's own guidance to transferee judges confirms that this dual role is the ordinary, expected structure of coordinated litigation, not an aberration. The Manual for Complex Litigation observes that "[i]ncreasingly, complex litigation involves related cases brought in both federal and state courts," and it directs that, in appointing MDL leadership, courts should "consider including attorneys from jurisdictions with cases that may need to be coordinated" with the MDL. Manual for Complex Litigation, Fourth §§ 20.31, .312 (Federal Judicial Center 2004). The Manual likewise recognizes that, "[w]ithout special provisions to compensate state attorneys who cooperate with federal MDL-funded attorneys, the MDL fee structure presents an obstacle to cooperation," *id*. § 20.312, which is precisely why coordination orders and participation agreements like the ones at issue here exist: to formalize the terms on which MDL leadership counsel, who often are the same lawyers representing clients in parallel state court actions, may use MDL discovery and share in common-

11

benefit compensation. Participation agreements of the kind at issue in this MDL exist precisely because parallel state court representation by MDL leadership counsel is the norm rather than the exception, not because that representation is exceptional or disfavored.

Coordination orders like the one at issue here exist to manage that reality, not to eliminate it. They are premised on the assumption that MDL leadership counsel will continue to represent clients in state court and will seek to use MDL discovery there, subject to negotiated safeguards. *See*, *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 268 (E.D.N.Y. 2006) (noting coordination orders in MDL are structured to manage the practical reality that leadership can concurrently represent plaintiffs in parallel state court actions and may seek to utilize MDL discovery in those state proceedings).

Reading Rule 37(b)(2) to expose leadership counsel to fee-shifting sanctions whenever a disagreement arises over the scope of those safeguards, even where the underlying conduct involves a redacted, sealed filing that discloses nothing to the public, penalizes the very structure the Coordination Order was designed to accommodate.

Affirming the district court's decision tells every firm considering an MDL leadership role that doing so carries a distinct professional risk: exposure to court-ordered sanctions for conduct in a separate action, before a different court, on behalf

12

of a client the MDL court does not represent and whose case it will never decide. Under this reading, the liability continues indefinitely. Discovery in this MDL had effectively closed after a single, general-causation phase, and judgment was entered against all MDL plaintiffs nearly two years before the conduct sanctioned below. If Rule 37(b)(2) reaches that conduct, MDL leadership counsel remains exposed to fee-shifting sanctions indefinitely, for how they handle legacy MDL discovery in whatever unrelated litigation they pursue afterward, long after the MDL itself has gone dormant and any *active* discovery has ended. A Coordination Order tailored to manage active discovery between a live MDL and pending state actions cannot be read to bind MDL leadership counsel in perpetuity, extending its restrictions years after the MDL itself went dormant, with no discovery left to coordinate and no live MDL proceeding left to protect. *See*, *Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 422, (2d. Cir. 2004).

That risk goes beyond actions that any reasonable attorney would recognize as a clear violation. Here, the sanctioned conduct arose from a good-faith disagreement about whether a redacted, sealed filing, never shown to the public, the state court, or even amici's hypothetical client, constituted a prohibited "use" of confidential information. It cannot. A protective order exists to prevent confidential information from reaching the public or an adversary who has not earned access to it; a sealed, redacted filing that no one outside the parties to the underlying dispute

13

ever saw discloses nothing to anyone and works none of the harm a protective order is designed to prevent. Treating that as a sanctionable "use" collapses the distinction between disclosure and mere possession that the Protective Order itself draws. *See, Chao v. Gotham Registry, Inc.,* 514 F.3d 280 (2d. Cir. 2008) (finding that the decree underlying contempt must be sufficiently clear to allow the party to whom it is addressed to ascertain precisely what it can and cannot do). Firms cannot calibrate their conduct to avoid a risk that turns on where a court will ultimately draw that line after the fact.

The practical effect will be to push firms toward one of two responses, both harmful to injured plaintiffs. Some firms will decline MDL leadership roles altogether, concentrating leadership in fewer hands and reducing the pool of counsel available to represent plaintiffs' interests in coordinated proceedings. Others will accept leadership roles but decline to represent clients in parallel state court actions, forcing plaintiffs who want state court representation to retain separate counsel unfamiliar with the MDL discovery record, duplicating cost and effort that coordination orders exist to eliminate. Either outcome undermines the efficiencies Congress and the Judicial Panel on Multidistrict Litigation intended coordinated pretrial proceedings to achieve, and neither serves the interests of the plaintiffs the Protective Order and Coordination Order were designed to protect.

# **CONCLUSION**

For the foregoing reasons, and for the reasons stated in Appellants' brief, amici curiae respectfully request that this Court reverse the district court's May 8, 2026 Opinion and Order to the extent it imposes sanctions under Rule 37(b)(2) for conduct in the Texas Action.

Dated: July 31, 2026     Respectfully submitted,

/s/ Evan M. Janush     /s/ Paul J. Doolittle
Evan M. Janush, Esq.     Paul J. Doolittle, Esq.
THE LANIER LAW FIRM, PLLC POULIN WILLEY ANASTOPOULO, LLC
535 Madison Avenue, 12th Floor  32 Ann Street
New York, NY 10022     Charleston, SC 29403

Counsel for Amici Curiae

15

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g)(1) and Second Circuit Local Rules 29.1 and 32.1(4), I certify that the foregoing brief is proportionately spaced using 14-point Times New Roman font and contains 3,338 words, excluding the parts exempted from length limits by Federal Rule of Appellate Procedure 32(f).

Dated: July 31, 2026

/s/ Evan M. Janush
Evan M. Janush
Counsel for Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I electronically filed the foregoing amicus brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 31, 2026

/s/ Evan M. Janush
Evan M. Janush
Counsel for Amici Curiae

16